Shall I just begin? I'm sorry, I'm not used to doing this. Shall I just proceed? Please state your appearance. Oh, sorry. Jean Raifan for Rosa Camacho. Okay. You may begin. Can you see, can you hear us, and can you see the clock? Yes, I can. Thank you very much. All right. Thank you. Okay. Rosa Camacho became a fund member in 1980. She retired in 1991, and she turned 55 years of age in 2006. By virtue of her membership in the retirement fund, she acquired an accrued interest, a vested interest in COLA in the amount paid by U.S. Social Security, but not less than 2%, provided she was 55 years of age. When she became 55 years of age, she received COLA. She received COLA in 2007 and 2008 in an amount over 2%, but not as much as the U.S. Social Security provided. She received COLA in 2009 and 2010, but less than 2%. She did not receive any COLA after 2010, after public law 17-32 was enacted. 17-32 virtually eliminated her COLA benefit. The Commonwealth Constitution provides that accrued benefits of this system shall be neither diminished nor impaired. Her rights to the accrued COLA benefits was guaranteed and is guaranteed by the Commonwealth Constitution. Full benefits under the settlement agreement includes benefit payments in the amount guaranteed by the Commonwealth Constitution. Her accrued COLA benefit is therefore included within the definition of full benefits. I think the problem with the district court decision was that the court failed to consider whether Section 8358, which was amended by 17-32, whether it impaired or diminished her accrued benefits. She did not consider whether it was a violation of the Constitution, and I think that's where the mistake was. Ms. Rayford, let me ask you a question, because it seems like you're arguing that Ms. Camach was entitled to COLA benefits at the rate laid out in the 1993 Act, but didn't she retire in 1993? In 1991? Yes, that's correct. There is a—one of the statutes says— So I'm just trying to figure out how she could be entitled to any COLA benefit greater—about greater than what she was statutorily permitted in 1991 at the time of her retirement. The statute says that her membership continues— continues to be a member after she retires, and the—an accrued benefit accrues during her membership. Therefore, she continued to be a member, and therefore her benefit— she was entitled to the benefit after she retired also. Well, the 18—excuse me, 1889. She's not that old. The 1989 Act, as I understand it, which occurred during her tenure, said that the retirement annuity shall be calculated as follows and that they shall be entitled to a 2% COLA for retirement annuity. So that would have occurred during her tenure. Is that, in your view, a contractual obligation? A statutory contractual obligation? Under the Northern Mariana Constitution, Article III, Section 20A. Yes, it is a contractual relationship based on the Constitution. Let me just also say, if you check the excerpts of record on the COLA that was paid in 2007 and 2008, they refer to the— I believe they refer to the statute after she had retired, and that's how they were basing their retirement benefits. Ms. Raifan, I just wanted to ask you, because it seems like you cite to the Cody case, that's the primary case. I think it's the only case that you discuss. I'm not sure that definitively answers the question that's before us. It looks like Alaska and Hawaii both have nearly identical constitutional provisions. Have you had a chance to look at those, or can you tell us today if there's anything that we can learn from them, or one that you maybe have looked at and that you find the case law in those different jurisdictions maybe more persuasive? I have read those at some point, but I think the Cody case is a controlling one. It's from the Miriamis Islands here. I'm not quite sure. Maybe you can help me understand, because it seems like the Cody case doesn't directly answer the question presented here. Why do you think it does? Well, one thing it says is that the accrued benefit is acquired by virtue of their membership, and their membership is how they accrue the benefit. In the Cody case, that was a little bit different. It was a disability case. There weren't a lot of statute in between, so I don't know what to say. Well, counsel, I guess when I look at Cody, I see it indicating that PL 1360 is not retroactive and is only applicable to persons who were not yet members of the fund on the date the law was enacted. Here, however, there's no indication that the legislature intended PL 1360 to apply retroactively to persons who were members of the fund prior to the enactment of the law. So why do you think Cody, then, is controlling? She continued to be a member of the fund, so during her membership, she is entitled to the benefits that are available. So if I understand your position correctly, it's that membership is an ongoing concept. That has to be your argument, because then the 1989 law that stated that the annuity shall include a 2% COLA, then if that follows, then the Cody holding is helpful to you, because it said the benefit reduction can't apply to people who were members before the legislation was enacted. Let's see. I was just looking at Public Law 6S41. It says a member who retires shall remain a member so long as she obtains the right to any benefits from the fund. Therefore, she would be a member. Well, the real question seems to me to be whether she was a member at the time the 2% COLA statute was enacted. She was. She was a member since 1980. I think if I understand opposing counsel's argument, it is in part that there's a moment in time when a person becomes a member, and that's the only time it counts for this purpose. And for her, that would be 1980. So that's why that seems to be an unanswered by the case law question in this case. Is membership a status that exists from the beginning to the end, or is membership the acquisition of membership at a point in time? Are there any cases or specific laws that I've missed that answer that question? I think the Cody case says that acquisition occurs during membership. It doesn't say the first day of membership. And I can't imagine that on the first day of membership and you have no benefits that you worked 20 years and you've accrued nothing. She accrues the benefits during her membership. But you don't have a case specifically saying that, aside from Cody, correct? That's correct. Okay. Do you want to reserve the balance of your time? Yes, please. Good morning. Chief Judge McGeough, members of the panel, good morning. Thank you. Good morning. Welcome to Hawaii. I think in the words of the Volkswagen case that we cited, the clean air of Volkswagen case, the court there looked at a settlement agreement and the appellate division, another panel from this circuit, concluded we are reading the plain terms of the settlement agreement. We are convinced that the district court got it right. But the settlement agreement isn't really the issue here, it seems to me. The question is a constitutional question and a contract clause question regardless of what the settlement agreement said. And to the extent that we don't have a clear answer to what membership means in the Northern Mariana Constitution and we don't know how the court would actually treat this specific situation, should we certify a question to the Supreme Court and ask? Your Honor, I think that certainly that would be a decision for the panel to make. I don't think that's necessary for two reasons. One, I think under Cody, the law in the CNMI is clear that a person's rights within the retirement fund at that point vested when they became a member. So for Ms. Camacho, they vested in 1980, and that was kind of the definitive point for her rights. And COLA was not in existence at the time. Well, that's the question to be answered, though, whether membership— that's why I asked your friend on the other side whether membership is a static moment in time when a person arrives or whether membership within the meaning of the constitutional provision means an ongoing status because that may be part of the answer. Okay. Cody, I think, would indicate that the court believes that the vested rights are defined at the moment of membership when you become a member. But her counsel's point has merit. How could it be that for 20 years membership means nothing from the moment that she became a member in 1980 to the time when she retired? I mean, that seems to be her argument. So defining, again, whether or not it accrues or not is going to be critical. Your Honor, I don't believe— I would not accept that it means nothing to be a member for 20 years because that defines the calculation of benefits. The longer you're in the system, in the membership, that has an impact on your benefits, obviously, and certain rights that you have within the system. I'm curious. Is the settlement fund's position that COLAs are included in the settlement agreement's definition of full benefits? I'm sorry, Your Honor. Well, let me ask this. To what extent has the settlement fund paid Ms. Camacho and those similarly situated COLA benefits? Are they being paid at the 75% of the total amount? That brings up a second point. No. The COLA payments have not been paid since, I believe, 2009. They're just—and under the settlement agreement, which the parties— and this, I think, is an important point, and it goes to the constitutional issue too. The parties—okay, so the background is, of course— Is she getting paid at 75% pursuant to that settlement agreement? She is actually—so far, she is getting 100%. There were several months early on where she, I believe, was only paid— actually, I take that back. She's always been paid 100%. The government is required under the settlement agreement to pay 75%. If there's a shortfall, then—and there were for a few months, I believe the retirement fund actually paid that. But, of course, the retirement fund doesn't want to do that because that depletes its corpus. But the government has thus far been able to cobble together the money to pay both the 75% and the 25%. But that doesn't include the COLA, correct? No, and it never included the COLA because COLA was not included in the settlement agreement. It was—the settlement agreement specifically defined the rights as of June 26, 2013. But the settlement agreement can't override the requirements of the Constitution if they differ, correct? As a theoretical point, I know you don't think that it's relevant, but do you agree that if the Constitution says that she has to get COLAs, that overrides the settlement agreement? If the Constitution said that, exactly as you phrased it, that would be troubling. But I don't think even dispositive of the issue. The Constitution doesn't say that. It says you cannot impair or diminish a benefit. Well, there's sort of—I'm hearkening back to law school here, so it's been a while, and I may have this wrong, but the Constitution does say that membership in the system constitutes a contractual relationship, and so the government can't impair contracts under the federal Constitution. So why isn't that a problem? Because this was—the settlement agreement was not a one-sided deal. The settlement agreement involved an agreement by members of the then-retirement fund who wanted to stay in the defined benefit plan. Except in 1989, the legislation was passed that said that annuities shall include a 2% cost-of-living adjustment annually, and that was during her tenure and before she retired. So why doesn't that apply to her, and why is the Commonwealth allowed to essentially renege on that statutory contract? It's not a reneging, Your Honor, and I think the New Mexico case that we cited was instructive on this. You had a retirement fund that was insolvent, and choices had to be made. The picture I have in my mind of this, to answer your question in a little different way, is imagine the Titanic, you know, Leonardo DiCaprio and Kate Winslet standing on the bow, except that the accident doesn't happen at night, it happens in the day, and they're heading for the iceberg, and the crew sees it and says, we have to move. The passengers see it and say, we have to move. And then somebody says, well, wait a minute, we can't move because— Well, isn't that the function of a constitution is to say you can't move? No, no, because—well, no, because first the constitutional right is impair and diminish, which the trial court mentioned but did not really go into an analysis of, because it found that the parties, the people who decided— in my scenario, the settlement agreement is moving the Titanic. And what happened was the people who wanted to stay in the defined benefit plan, they said, okay, we want to stay in this. We agree that our rights will be as defined in 1 C.M.C. 8358 for the purpose of COLA, which COLA was discretionary, undoubtedly was discretionary. And that discretionary statute came after the plaintiff here retired, correct? Yes, but she was a member of the fund, and she had a choice. She could have opted out. So now you say she is a member of the fund, so she's been a member of the fund the whole time? I mean, earlier you said membership was a one-time— No, no, no, no, her accrued benefit, her accrued rights, the definition of full benefits is as defined when you become a member. That's what Cody—the proposition that Cody stands for. Well, it's undoubtedly financially really important to the Commonwealth to know the answer to this question. So it seems to me that makes it even more appropriate to ask the Commonwealth Court how this all fits together. And the legislature, to Judge Graber's question, in 2011 amended at Section 8358 replacing that shall language to maybe entitled language. So the legislature has been sort of several times sort of moving around whether or not the COLA should be applied or shouldn't be applied or whether they shall be applied or whether they may be applied. So isn't this, again, a matter of us having to get definition and clarification from the Supreme Court in order for us to really answer the question? I don't believe so, Your Honor. I think that the answer is—and the changes—the COLA law has been amended six times. A lot of them were kind of technical amendments. But the settlement agreement that Ms. Rafen's client and all the other members who decided to stay in the defined benefit plan agreed to was the definition— among the things they agreed to was the law as it applied, 8358 applied at the time, as of June 26, 2013. They agreed to that. They made an agreement. And the difference on the constitutional level— Was there agreement? Did everybody understand at that point in time that COLAs were full benefits? Your Honor, I think that—did everybody understand? The members were represented by very competent counsel. It was as you— Do you think everybody understood that COLAs were included in the full benefits? They were not included in the full benefits. It's discretionary. At the time, it was—the law was that it was dependent on a contribution from the legislature. That if there was going to be a COLA, if the board said, oh, let's have a COLA, it only applied if the legislature appropriated the funds. Do you think everybody understood that? Well— Because that's what you're telling us to believe or to rely on. Your Honor, clearly I can't speak for every person in the settlement fund. I will speak for Ms. Camacho. Ms. Camacho knew she was not getting COLA payments after the settlement. Well, but the settlement agreement also specifically refers to the constitutional provision, Section 20A, as definitional for full benefits, so it sort of folds in on itself, it seems to me. Because since that constitutional guarantee is part of the definition within the settlement agreement, it seems like you're just saying, well, we're going to take half of what it says and not the other half. No. Your Honor, and I'm trying hard to dissuade you of this idea that the Constitution somehow guaranteed specifically COLA payments. The Constitution prohibits benefits from being diminished or impaired. It doesn't prohibit parties from contractually agreeing to alter, which is what the settlement agreement does. But the problem I have with that is that the settlement agreement's definition of full benefits states that it refers specifically to that which is guaranteed in Section 20A, and Section 20A says that it's a contractual relationship and that accrued benefits can't be diminished or impaired. So that's written into the definition of full benefits within the settlement agreement. It's a freestanding constitutional provision that would probably apply anyway, but it's in the settlement agreement as the definition. So that's my problem, I think, with the argument that you're making. Okay. I don't think that it says – well, the settlement agreement does not define full benefits to – if I understood you correctly. Let's be clear. Full benefits does not include COLA payments. Well, it doesn't say that specifically. That's the problem. In the definition. That's why there's ambiguity here. And if you look to Alaska law, which has similar ones, the court there has interpreted that in a way that might favor the plaintiff, the appellant. If you look to Hawaii law, the court there has interpreted that. Their Supreme Court have looked at that in a way that maybe it doesn't. And so – and if you look at federal contractual law, so it's very difficult. So I just am wondering why is it this appropriate for the Supreme Court of the Commonwealth to decide? I mean, should we be deciding that? I know you're having a hard time understanding what we're having a hard time dealing with, and that's whether these COLAs were meant to be part of the full benefits, which the Constitution guarantees and which you all both are arguing that Cody says you can't diminish. The settlement agreement does not abrogate the rights – any constitutionally guaranteed right. It is a contractual agreement actually to defer certain payments. The agreement to accept 75% was not a relinquishment of the other 25%. It was a contractual agreement of people who wanted to maintain the defined benefit plan. But then the question is 75% of what? That's what we're getting back to. Okay, I understand. I understand. But once again, it was – there was an agreement. It is 75% of full benefits as defined in 1 C.M.C. 8301. That's what the parties agreed to. That's what the people who wanted to stay – and this is at 1.13 of the settlement agreement. The people who wanted to stay in the defined benefit program, who wanted to see it have a chance to survive fiscally, they agreed to this. And the full – and 83 – within 8301 at SEC referred to there, Section 8385 clearly states that COLA payments are subject to appropriation. They're only due if there's an appropriation. And I just think that's an important – Thank you. Thank you, Your Honors. Mr. Effend? Thank you very much. I don't think I have anything to add. We think the COLA – she accrued the interest in COLA. It's protected by the Commonwealth Constitution. And she should be paid it, and her pension should be adjusted to – accordingly to that. Thank you. Thank you. The case of Rosa Camacho v. the Northern Mariana Islands Settlement Fund is now submitted.
judges: MURGUIA, GRABER, MENDOZA